IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DOUGLAS EDELMAN<br>and<br>DELPHINE LE DAIN,<br><br>                Defendants. | 1:24-CR-00239 (CKK) |

**GOVERNMENT'S MOTION FOR A RULE 15 DEPOSITION**

      The United States, by and through the undersigned attorneys, respectfully moves this Court for an order pursuant to Federal Rule of Criminal Procedure 15 to take the pretrial deposition of a material witness in the United Kingdom. The witness—who is identified in the Indictment as Co-Conspirator 1—suffers from serious health conditions that warrant an expedited deposition to preserve his testimony for the trial of both defendants.

      Because the same health conditions preclude Co-Conspirator 1's travel to the United States, the Government requests that this deposition take place in the United Kingdom. Defendant Douglas Edelman ("Edelman") agrees that Co-Conspirator 1's testimony is material and that the deposition is necessary in the near term to preserve Co-Conspirator 1's testimony for trial. Defendant Delphine Le Dain ("Le Dain") is a fugitive, who has thus far refused to surrender to the United States and taken steps to evade arrest and participation in these criminal proceedings.

      As set forth below, the circumstances justify taking Co-Conspirator 1's deposition in the United Kingdom as soon as feasible. The Government has provided a sufficient basis for the

Court to make the necessary factual findings, pursuant to Rule 15(c)(iii), enabling virtual attendance by Defendant Edelman (and Defendant Le Dain, should she decide to participate in these criminal proceedings by appearing before the Court).[1]  The Government requests that the Court enter the attached Proposed Order, which is submitted with this filing.

I.     **BACKGROUND AND INTRODUCTION**

Edelman is an American citizen who has lived abroad since at least the 1990s.  Between 2003 and 2020, Edelman made more than $350 million as a defense contractor during the United States' post-9/11 military actions in the Middle East and Afghanistan.  His income was primarily owner distributions from his 50% share in Mina Corp. and Red Star Enterprises (collectively "Mina/Red Star"), businesses that Edelman co-founded with a Kyrgyz national, referred to as "Individual A" in the Indictment.  Since 2003, Mina/Red Star have collectively received $7 billion in U.S. Department of Defense contracts to provide jet fuel to U.S. troops.  Edelman used his earnings to invest in businesses and properties around the world, as well as purchase multiple yachts, a ski chalet in Austria, a townhouse in London, and a house in Spain.

Rather than pay U.S. taxes on his income (which stemmed from contracts with the U.S. government) Defendant Edelman orchestrated a yearslong scheme to pretend that Le Dain was the founder and 50% owner of Mina/Red Star from the beginning, and that the resulting wealth had always belonged to her.  Edelman directed Defendant Le Dain and several other personal and business associates—including Co-Conspirator 1—to spread the false story of Le Dain's purported ownership and conceal Edelman's identity as the true owner of the wealth.

---

[1] Defendant Le Dain has been given notice of this anticipated Rule 15 deposition and has thus far refused to participate in these criminal proceedings, *see* Status Report as to Delphine Le Dain, Dkt. 34, meaning that she has not appeared to object to the taking of this deposition or participate in planning or preparing for it.  Should that change, the Government will make a supplemental filing to address the format of her participation in the scheduled deposition.

At Edelman's direction, the false story and related false information was relayed to numerous third parties, including the U.S. Department of Defense, a Subcommittee of the U.S. Congress, the Internal Revenue Service, and the Department of Justice.  As a result of the scheme, Edelman evaded taxes on more than $350 million of income—and caused approximately $129 million of tax loss to the U.S. treasury.

On May 16, 2024, a federal grand jury sitting in Washington, D.C., returned a thirty-count indictment charging Defendant Edelman and Le Dain with one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (Edelman and Le Dain); fifteen counts of tax evasion, in violation of 26 U.S.C. § 7201 (Edelman and Le Dain); two counts of making false statements, in violation of 18 U.S.C. § 1001 (Edelman); and twelve counts of willfully violating foreign bank account reporting requirements, in violation of 31 U.S.C. §§ 5314 and 5322(b) (Edelman).

The Government and Defendant Edelman's counsel have submitted a joint proposed pretrial schedule, Dkt. 37, requesting a trial date in October or November 2025.  The Government flagged its intent to seek a Rule 15 deposition of Co-Conspirator 1 at Defendant Edelman's initial appearance before the Court on September 13, 2024.  Sept. 13, 2024, Minute Entry.  The Court entertained oral argument about the need for the deposition and its format at the status conference on November 1, 2024.  Nov. 1, 2024, Minute Entry.  As discussed further below, Defendant Edelman agrees that the deposition is necessary and must occur in the United Kingdom as soon as feasible but disagrees with the Government about the format of the deposition and his attendance at it.  Defendant Le Dain has been repeatedly notified that the Government will seek a Rule 15 deposition for testimony to be used in her criminal trial but has thus far refused to appear in these proceedings.

## II.     REQUEST FOR AN ORDER PURSUANT TO RULE 15

Federal Rule of Criminal Procedure 15 provides a mechanism for a court to order the pretrial deposition of a witness for use at trial (a so-called "Rule 15 deposition"). Fed. R. Crim. P. 15 ("A party may move that a prospective witness be deposed in order to preserve testimony for trial . . . because of exceptional circumstances and in the interest of justice.").

### A. The Circumstances Justify an Order to Take Co-Conspirator 1's Deposition in the United Kingdom

A party seeking a Rule 15 deposition in a criminal matter bears the burden of demonstrating exceptional circumstances necessitating the preservation of testimony through a deposition. *See United States v. Kelley*, 36 F.3d 1118, 1124 (D.C. Cir. 1994). Critical factors toward meeting this burden include the materiality of the testimony and the unavailability of the witness to testify at trial. *Id.* at 1124-25; *United States v. Vo*, 53 F. Supp. 3d 77, 80 (D.D.C. 2014). Materiality in the Rule 15 context is the same standard developed for applying and interpreting *Brady v. Maryland*, 373 U.S. 83, 83 (1963). *See Vo*, 53 F. Supp. 3d at 81; *United States v. Sanford, Ltd.*, 860 F. Supp. 2d 1, 4-5 (D.D.C. 2012). That is, "the witness need not provide totally unique testimony; nor does she need to be a 'critical' witness" but the offering party must show that, with the witness's testimony, "the likelihood of a different result is great enough to undermine confidence in the outcome of the trial." *Vo*, 53 F. Supp. 3d at 82 (quoting *Smith v. Cain*, 565 U.S. 73, 75 (2012)).

   1. <u>Co-Conspirator 1's testimony is material to the criminal case against both defendants</u>

Defendant Edelman agrees that Co-Conspirator 1 is material to the criminal case against him, and that a Rule 15 deposition is warranted on this ground. *See* Joint Status Report ¶ 4, Dkt. 33.

As alleged in the Indictment, Co-Conspirator 1 is the long-time accountant for Defendant

4

Edelman and the "family office" that handled the financial transactions. Co-Conspirator 1 began doing bookkeeping for Defendant Edelman in 2004, and prepared financial statements for several of Douglas Edelman's companies—some of which Edelman used to fund Mina/Red Star, the lucrative defense contracting business. Co-Conspirator 1's role expanded to include assisting Defendant Edelman with his many other bank accounts, entities, and financial transactions. Co-Conspirator 1 worked for Defendant Edelman through at least 2020, and—at Edelman's direction—provided false information to numerous third parties about Defendant Edelman's relationship to Mina/Red Star and the related bank accounts, entities, and financial transactions. Co-Conspirator 1 was privy to Edelman's formation and use of nominee offshore corporations to receive distributions from Mina/Red Star and attempts to fabricate documents purporting to show Le Dain's historical ownership. After Edelman restructured his businesses in an effort to make Le Dain appear to be the owner, Co-Conspirator 1 was also involved in efforts to legitimize this new sham structure and hide Edelman's involvement.

Co-Conspirator 1's testimony is also material to the criminal case against Le Dain. Although he took orders from Edelman, Co-Conspirator 1 occasionally sought Le Dain's signature on documents to maintain the sheen of legitimacy on the story that she was the source of the wealth. In fact, many of the conspiracy's alleged overt acts by Le Dain involve her signing documents that Co-Conspirator 1 then transmitted to third parties.

    2. <u>Co-Conspirator 1 may be unavailable for trial, and cannot travel to the United States</u>

Defendant Edelman agrees that Co-Conspirator 1 is potentially unavailable for trial, and that a Rule 15 deposition is warranted on this ground. *See* Joint Status Report ¶ 4, Dkt. 33.

A prospective deponent is unavailable for the purpose of Rule 15(a) if a substantial likelihood exists that he will not testify at trial. *See United States v. Trabelsi*, No. 06-CR-89

(RDM), 2023 WL 4341429, at *3 (D.D.C. April 5, 2023) (*Trabelsi I*) (citing *United States v. Drogoul*, 1 F.3d 1546, 1553 (11th Cir. 1993); *Vo*, 53 F. Supp. 3d at 81). Co-Conspirator 1 suffers from multiple serious medical conditions. These conditions are described in more specificity in a letter from Co-Conspirator 1's physician, filed as sealed Exhibit A to this motion. According to the physician:

> In summary, in view of his physical and mental health conditions as set out [in the letter], my professional medical opinion is that [Co-Conspirator 1] is not fit to travel to the United States. His chronic and debilitating conditions are not likely to substantially improve in the future; in fact, they are more likely to worsen. Any significant travel would jeopardise [Co-Conspirator 1]'s health and put him at risk of a serious and possibly fatal, medical episode.

*See* Letter of Dr. A. Mitchell, attached as Exhibit 1.

Co-Conspirator 1's circumstances warrant a finding of unavailability. *See, e.g. United States v. McGowan*, 590 F. 3d 446, 448, 454-56 (7th Cir. 2009) (finding that a witness suffering from several serious health conditions was "unavailable" because doctors believed both travel to and testimony at trial posed a serious threat to her health); *United States v. Ahmed*, No. 14-CR-277 (DLI), 2016 WL 3653961, at *2 (E.D.N.Y. July 1, 2016) (doctor's note describing witness's serious, potentially life-threatening and chronic medical conditions sufficient to establish unavailability, where doctor opined that witness's health would be jeopardized if witness traveled to testify); *United States v. Ulysse*, No. CR RDB-21-054, 2022 WL 1271199, at *1 (D. Md. Apr. 28, 2022) (finding serious health conditions can render a witness unavailable to travel for trial such that preservation of the witness' testimony by deposition is warranted where Government submitted notes from medical provider recommending that witnesses not travel for trial due to medical conditions and frequent treatment).

### B. The Deposition May Be Taken Outside Defendant Edelman's Physical Presence

Defendant Edelman has asked that his bond conditions be modified to permit him to

travel to the U.K. for the deposition. In the alternative, he has asked that the Court preside over the two-way video deposition (without his physical presence) then preside over a bench trial (in lieu of a jury trial). *See* Joint Status Report ¶¶ 4, 6, Dkt. 33; Nov. 1, 2024, Minute Entry.

Rule 15, caselaw, and the factual circumstances of this case support an order that Co-Conspirator 1's deposition be taken by two-way video (with Defendant Edelman participating from the United States). This Court's participation is not necessary for the deposition to lawfully go forward nor for Defendant Edelman to meaningfully participate.

> 1. <u>No reasonable conditions will ensure Edelman's continued appearance if he is allowed to travel outside the United States</u>

Rule 15(c)(3) provides that a deposition may be taken outside the United States without the Defendant present if the Court makes case-specific findings as follows:

(A) the witness's testimony could provide substantial proof of a material fact in a felony prosecution;
(B) there is a substantial likelihood that the witness's attendance at trial cannot be obtained.
(C) the witness's presence for a deposition in the United States cannot be obtained;
(D) the defendant cannot be present because:
    (i) the country where the witness is located will not permit the defendant to attend the deposition;
    (ii) for an in-custody defendant, secure transportation and continuing custody cannot be assured at the witness's location; or
    (iii) for an out-of-custody defendant, no reasonable conditions will assure an appearance at the deposition or at trial or sentencing; and
(E) the defendant can meaningfully participate in the deposition through reasonable means.

Fed. R. Crim. P. 15(c)(3).

Defendant Edelman is currently an out-of-custody defendant. As of the time of this filing, his bond conditions preclude him from travel outside the United States. He is currently on GPS monitoring by Pretrial Services and is generally confined to a residence in the DC area. He has no cash bond securing his appearance. He has a condition precluding his communication

with his co-conspirators, which he has knowingly and repeatedly violated.

If Defendant Edelman were allowed to travel to the United Kingdom, there are no reasonable conditions to preclude him from taking a short train ride to a jurisdiction that would not extradite him to the United States. Indeed, his co-defendant wife has deliberately maneuvered around U.S. authorities to travel to a country that will not extradite her to the United States.[2]  *See* Status Report as to Delphine Le Dain, Dkt. 34. Even if he were on GPS monitoring, there is no way to act on information that he has moved outside an acceptable area: U.S. law enforcement agents would be without any authority to detain him and U.S. Pretrial Services is without any authority in the United Kingdom. If Defendant Edelman chose to abscond while in the U.K., neither U.S. nor U.K. law enforcement would have authority to pursue, detain, or arrest him, absent a new arrest warrant from the Court, Interpol Red Notice, and provisional arrest warrant in the U.K., which would likely take weeks or months to effectuate. Even if expedited, these machinations would allow Defendant Edelman to be long gone before action could be taken in the United Kingdom.

Defendant Edelman has the motive and means to flee. He is under indictment for having orchestrated one of the largest charged tax evasion schemes in U.S. history. He is alleged to have defrauded the U.S. Treasury out of taxes on money he made from the U.S. purse: profits from contracts arising from the U.S.'s post-9/11 military engagement in Afghanistan and the Middle East. He is also alleged to have lied – including under penalties of perjury – to the IRS, Department of Defense, Department of Justice, and the U.S. Congress. Securing Defendant

---

[2] While of course the defendant is not his co-defendant wife, her fugitive status lays bare the dangers of a defendant not subject to stringent conditions of release, as well as the ease with which defendants can break promises to self-surrender to U.S. authorities while in foreign jurisdictions.

8

Edelman's continued appearance to face these criminal charges is of significant import to the American public, and no reasonable condition would ensure this.

> 2. Two-way video will permit Edelman's meaningful participation and has been used by other Courts facing similar circumstances

Courts—including, recently, a court in this district—have allowed foreign depositions in the absence of the physical presence of the defendant, as provided by Rule 15(c)(3)(D). *See Trabelsi I*, 2023 WL 4341429, *4 (concluding that Fed. R. Crim. P. 15(c)(3) allowed the government to take a deposition outside the United States without the defendant's presence where the defendant could not be "securely transported" to France for the deposition and that his "continuing custody" could not be assured while there because the Marshals Service "does not have authority to maintain custody of a prisoner in a foreign country"); s*ee also United States v. Abu Ali*, 528 F.3d 210, 240–42 (4th Cir. 2008) (affirming a district court's authorization of depositions when the witnesses could only testify in Saudi Arabia and the defendant could not attend because he was incarcerated in the United States, and finding that Rule 15 requirements were met because the Saudi witnesses testified under oath and the defendant was able to watch the deposition via two-way video link as defense counsel cross-examined him in person overseas); *United States v. Sapse*, No. 2:10-CR-0370-KJD-GWF, 2011 WL 1576898, at *6 (D. Nev. Apr. 26, 2011) ("The practical inability to maintain custody over a detained defendant while on foreign soil is a sufficient reason for not securing his presence at the deposition. Likewise, if there is a substantial risk that an out-of-custody defendant will not return for trial if he permitted to leave the United States, then the use of alternative means, such as two-way video conferencing, may justify the denial of defendant's right to a face-to-face meeting with the witness.")

Consequently, the Government proposes that the following protocol govern the taking of

the deposition, *see* Fed. R. Crim. P. 15(c)(3):

1. The Government will provide the requisite formal notice to the defendant and his counsel about the date, time, and location for the deposition. In the meantime, the Government is holding the week of February 3-7, 2025, for the deposition, which we understand is an acceptable week to Defendant Edelman's counsel (as well as Co-Conspirator 1's counsel).

2. Pursuant to Rule 15(d), if this Court grants the Government's motion, and determines that Defendant Edelman is unable to bear the cost of his attorney traveling to the deposition and any accompanying costs, the Government will pay reasonable travel and subsistence expenses for one of Defendant Edelman's attorneys to attend the deposition and pay the costs of the deposition transcript and videotaping.

3. The deposition will take place either at the U.S. Embassy in London or the London offices of Baker McKenzie (Defendant Edelman's law firm). There would be a two-way video link such that the witness and the defendant(s) could always see each other. Co-Conspirator 1 will be placed under oath at the beginning of the deposition.

4. The Government requests that the Court either preside over the deposition from a D.C. courtroom or appoint a Magistrate Judge to do so. In the latter instance, although final decisions about objections would be the purview of the Court, the presence of a Magistrate Judge could provide for a smoother deposition overall.[3]

---

[3] The Government emphasizes that while a judge presiding over the proceedings would facilitate a smoother deposition, it is not <u>necessary</u>. Given the breadth of Co-Conspirator 1's involvement

(continued...)

Defendant will be present at the deposition with counsel in the United States before the Court or a Magistrate Judge in a courtroom. Alternately, Defendant will be present at the deposition at his law firm's offices and the Court or a Magistrate Judge will be available by phone to resolve depositions. Another of defendant's counsel will be present in the U.K. with the witness. The defendant will be provided the means to consult with his counsel during the deposition in the U.K. via private telephone link.[4] Government counsel will be in both locations as well.

5. The deposition will be videotaped, with objections noted on the record, with the witness answering each question, regardless of objections, which could then be ruled upon by the Court either in real time (if the Court presides) or post-deposition but prior to the admission of the testimony (if a Magistrate Judge presides or is on call, or the Court is on call). The ultimate admissibility at trial of the full deposition would be subject to a later motion, with consideration given to Co-Conspirator 1's availability (health conditions) at that time. In other words, the Government proposes that the videotaped deposition be used only if Co-Conspirator 1 is unable to appear in person at trial.

---

in the charged crimes, the Government anticipates that his direct examination will be several days, and that his cross examination will not be short. Given the time difference, it will likely be infeasible to schedule full days (7 hours) of testimony each day. Co-Conspirator 1's health conditions dictate that this deposition must happen soon—meaning that it may not be feasible to delay it to a block of dates that is logistically feasible for this Court (or a Magistrate Judge).

[4] If the deposition is at the U.S. Embassy, security restrictions will preclude non-government employees from bringing electronic devices into the building. The Government and Defendant Edelman's counsel have agreed that holding the deposition at Baker McKenzie offices would facilitate better communication between the U.S. and U.K. parties.

These procedures are similar to those used in other cases where courts have allowed Rule 15 depositions of foreign witnesses in the absence of the defendant. *See United States v. Trabelsi*, No. 06-CR-89 (RDM), 2023 WL 4344526 (D.D.C. June 5, 2023) (*Trabelsi II*) (videotaped Rule 15 deposition presided over by Magistrate Judge Upadhyaya).

The proposed procedures will allow the defendant to take an active role in the deposition proceedings and his lawyers to cross-examine the witness in person. *See United States v. Medjuck*, 156 F.3d 916, 920 (9th Cir. 1998) (citing *United States v. Gifford*, 892 F.2d 63, 65 (3d Cir. 1989) and *United States v. Salim*, 855 F.2d 944, 950 (2d Cir. 1988)). These procedures will assure the reliability of the testimony in a manner that comports with the Constitution. Indeed, these procedures provide more protections than those approved by the Supreme Court in *Maryland v. Craig*, 497 U.S. 836 (1990) (introduction of videotaped testimony of child victim in child abuse case did not violate the Sixth Amendment's Confrontation Clause), and follow the blueprint laid out in *Abu Ali*, 528 F.3d at 241-42.

The defense has suggested that for the Confrontation Clause to be satisfied, the trier of fact must be physically present while the witness testifies and, therefore, having the Court preside over the deposition with a subsequent bench trial is the only appropriate mechanism to ensure this. The Government is not prepared to agree to a bench trial at this juncture nor does the governing case law dictate that the defense's suggested course is the only permissible way to conduct a Rule 15 deposition of a material foreign witness. In accordance with Rule 15, the Court should permit the deposition to proceed on the terms set forth above and defer a decision as to admissibility to a later date, after further briefing. *See* Fed. R. Crim. P. 15 (f) ("An order authorizing a deposition to be taken under this rule does not determine its admissibility."). If the Court and the parties later agree to a bench trial, and if the deposition is ruled admissible at the

time of trial, the Court will still be able to view the same videotaped deposition.

### C. Defendant Le Dain Has Thus Far Refused to Appear in These Proceedings

Defendant Le Dain has had notice of the Indictment and the warrant for her arrest since July 3, 2024, when her co-conspirator husband was arrested in Spain, and this criminal case was unsealed. As detailed in the Government's recent status report as to Delphine Le Dain, the Government held off on executing Le Dain's arrest warrant due to her repeated assurances that she would remain in Spain and that she wanted to self-surrender to U.S. authorities. The Government flagged the potential Rule 15 deposition of Co-Conspirator 1 at the first public appearance by Defendant Edelman before this Court on September 13, 2024. *See* Sept. 13, 2024, Minute Entry. In an email on September 26, 2024, attempting to schedule Defendant Le Dain's self-surrender as soon as feasible, the Government explicitly advised Le Dain's counsel that Co-Conspirator 1's Rule 15 deposition was being sought to preserve testimony for Le Dain's criminal trial as well.

Despite having set a self-surrender date—and even arranged for housing in the United States, cleared by her Pretrial officer—Le Dain broke her agreement to leave Spain and fled to France before her anticipated travel to the United States. She has recently retained new counsel, an American lawyer based in the United Kingdom, who did not relay any plans for her to self-surrender.

"Federal courts do not play 'catch me if you can.'" *United States v. Martirossian*, 917 F.3d 883, 885 (6th Cir. 2019) (approving the use of the fugitive disentitlement doctrine where a defendant attempted to challenge his indictment without presenting himself to the court). Defendant Le Dain has thus far refused to present herself to the Court and participate in pretrial proceedings: she could have quickly received discovery had she self-surrendered as promised and not delayed her arrest and then fled to a new country. All the while, a key witness against

13

her is growing more ill as days go by. It is not feasible for the Rule 15 deposition to be postponed until the undetermined future date when she self-surrenders or is arrested, transported, and brought before the Court. To do so would allow Defendant Le Dain to potentially profit from her fugitive status, should Co-Conspirator 1 eventually become completely unavailable for a deposition. *See Barker v. Morris*, 761 F.2d 1396, 1400-03 (9th Cir. 1985) (finding that defendant's "lack of opportunity" to cross-examine a witness was "directly attributable to [his] fugitive status"); *see also United States v. Ponzo*, 853 F.3d 558, 578-79 (1st Cir. 2017) (a fugitive defendant's confrontation rights can be subject to the forfeiture-by-wrongdoing exception).

Contemporaneous to the filing of this motion, the Government will provide Defendant Le Dain's counsel with a copy of this filing and advise—again—that the Government is moving to take an expedited Rule 15 deposition for testimony in her criminal case, and refer counsel to Rule 15's provision that a defendant notified of the deposition and failing to appear may, absent good cause "waive[ ] both the right to appear and any objection to the taking and use of the deposition based on that right."[5]

### III.   CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court enter the Proposed Order, pursuant to Criminal Rule of Criminal Procedure 15, making factual

---

5 The Court need not decide now whether the proposed Rule 15 deposition would be admissible against Le Dain when or if she is brought to face the charges. The Government's request is merely for the Court to make a factual finding that Defendant Le Dain is a fugitive who is refusing to appear for these proceedings.

findings and ordering the pretrial deposition of the individual referred to in the Indictment as Co-Conspirator 1.

Dated: November 22, 2024

                                  STUART M. GOLDBERG
                                  Acting Deputy Assistant Attorney General

By: _____
      Sarah C. Ranney
      NY Bar No. 5050919
      Trial Attorney
      Department of Justice Tax Division
      150 M Street, N.E., Room 1.104
      Washington, DC 20002
      Sarah.C.Ranney@usdoj.gov

      Nanette L. Davis
      D.C. Bar No. 442136
      Senior Litigation Counsel
      Department of Justice Tax Division
      150 M Street, N.E., Room 1.107
      Washington, D.C. 20002

      Ezra Spiro
      NY Bar No. 5291838
      Department of Justice Tax Division
      150 M Street, N.E., Room 1.108
      Washington, DC 20002
      Ezra.K.Spiro@usdoj.gov

      MATTHEW M. GRAVES
      UNITED STATES ATTORNEY
      D.C. Bar No. 481052

      /s/ Josh Gold
By: _____
      JOSHUA GOLD
      TX Bar No 24103101
      Assistant United States Attorney
      U.S. Attorney's Office
      601 D Street, N.W.
      Washington, D.C. 20530
      Office: (202) 252-7651
      Joshua.Gold@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DOUGLAS EDELMAN<br>and<br>DELPHINE LE DAIN,<br><br>Defendants. | 1:24-CR-00239 (CKK) |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 22, 2024, I electronically filed the foregoing document and the proposed order with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

BY: /s/ Nanette L. Davis
Nanette L. Davis
Senior Litigation Counsel
U.S. Department of Justice
Tax Division
150 M Street, N.E., Room 1.107
Washington, D.C. 20002
D.C. Bar #442136
Tel.: (202) 514-8030
Nanette.L.Davis@usdoj.gov