IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DOUGLAS EDELMAN<br>and<br>DELPHINE LE DAIN,<br><br>　　　　　　Defendants. | 1:24-CR-00239 (CKK) |

**GOVERNMENT'S REPLY IN SUPPORT OF RULE 15 DEPOSITION**

　　　　The United States, by and through the undersigned counsel, respectfully submits this reply in further support of its motion to take the expedited pretrial deposition of Co-Conspirator 1 in the United Kingdom.  See Dkt. 40 ("Government's Motion").  Defendant Edelman has filed an opposition to this motion agreeing that the pretrial deposition is warranted but objecting to the form of the deposition and its admissibility down the road at trial.  Dkt. 50 ("Defendant's Opposition").

　　　　The law and the facts warrant an order to take Co-Conspirator 1's pretrial deposition.  Defendant's arguments about attending in person are moot in light of the Court's recent order revoking his bail.  See December 11, 2024, Minute Entry; Mem. Opinion, Dkt. 53.  The Government has made the showing necessary for the deposition to be ordered, and Defendant's objections to admissibility at trial are premature.  Unnecessarily linking the bench trial decision to the deposition risks issues down the road.  For the reasons discussed below, the Government respectfully requests that the Court enter the Proposed Order Pursuant to Federal Rule of

Criminal Procedure 15 to take the expedited pretrial deposition of Co-Conspirator 1 in the United Kingdom.

**I.   Being in custody precludes Edelman from attending the deposition in the United Kingdom**

Rule 15 provides that for an in-custody defendant such as Edelman, the deposition may be taken outside of defendant's presence if the Court finds that "secure transportation and continuing custody cannot be assured at the witness's location." The Department of Justice Office of International Affairs has advised Government counsel that United Kingdom authorities will not permit the U.S. Marshals Service to escort a detained defendant into the U.K. to participate in a Rule 15 deposition.

Edelman should not be released from custody to attend the deposition. The Court has recently revoked Edelman's release on a finding that Edelman repeatedly violated his conditions of release and there is no combination of conditions of release moving forward that will ensure his compliance. Mem. Opinion. at 18-19. In reaching this conclusion, the Court rejected Edelman's argument that he could be trusted to voluntarily comply with future release conditions. Id. ("All told, the present record leaves the Court with the impression that Edelman is unlikely to respect this Court's orders. . . . Edelman's proposed conditions boil down to a request that the Court trust him to comply. But Edelman has already abused this Court's trust."). Edelman's proposal for travel to the United Kingdom—that he essentially be "tethered to his attorneys," Def. Opposition at 5—requests the same type of trust and must be rejected. If Pretrial's High Intensity Supervision Program is insufficient to monitor him, see Mem. Opinion at 18-19, then surely he may not be released into a foreign country with even less supervision.

**II.   Edelman's arguments about the admissibility of the deposition at trial are premature**

Defendant's arguments about his Confrontation Clause rights concern the admissibility of the testimony, not whether a deposition should be held. Rule 15 expressly provides that the admissibility of the deposition be a separate inquiry from whether it should be taken. Fed. R. Crim. P. 15(f) ("An order authorizing a deposition to be taken under this rule does not determine its admissibility.").

In *United States v. Trabelsi*, 2023 WL 4341429 (D.D.C. Apr. 5, 2023) (*"Trabelsi I"*), the district court granted the government's Rule 15(c)(3) motion to take the deposition of a witness in France outside the presence of the defendant. In doing so, the court considered the defendant's argument that it should deny the motion because the Confrontation Clause would exclude the deposition testimony at trial. The court explained that at the stage of deciding whether to grant a deposition, it only needed to determine whether it would be an "act of futility" to permit the deposition because it will "clearly be inadmissible at trial." 2023 WL 4341429 at *5-6 (quoting *United States v. Drogoul*, 1 F.3d 1546, 1555 (11th Cir. 1993)).[1] This is a different standard from the standard for admission of the testimony at trial. Id. (citing *United States v. Burden*, 934 F.3d 675, 685-86 (D.C. Cir. 2019)) (explaining that to introduce all or part of a deposition at trial, the government must establish that (1) the prosecution cannot procure the witness with good-faith, reasonable efforts; and that (2) the defendant has had a prior opportunity to cross-examine the witness consistent with the Confrontation Clause); *United States v. Abu Khatallah*, 282 F. Supp. 3d 279, 282-84 (D.D.C. 2017)).

The proposed deposition is not an act of futility. Edelman has agreed that there are exceptional circumstances justifying preserving Co-Conspirator 1's testimony, and that he is a

---

[1] The court considered defendant's Confrontation Clause objections after the government moved for the admission of the deposition testimony at trial. *United States v. Trabelsi*, 2023 WL 4344526 (D.D.C. June 5, 2023) (*"Trabelsi II"*).

material witness. Def. Opposition at 4. As discussed below, there is precedent for admitting deposition testimony taken outside defendant's presence, and Rule 15 expressly provides for it. So it is not clearly inadmissible.

Whether or not this Court or a magistrate judge presides over the entirety of the deposition, the Government proposes that the proceeding be initiated by a judicial officer administering an oath to Co-Conspirator 1. Then, like any witness at trial, Co-Conspirator 1 will be subject to the federal law criminalizing perjury. See 18 U.S.C. § 1623(b) (expressly providing that the crime of perjury occurs "whether the conduct occurred within or without the United States"). Co-Conspirator 1 is additionally subject to the terms of his non-prosecution agreement with the Government, which is conditioned on Co-Conspirator 1's truthfulness and candor, and expressly provides that (a) if he knowingly gives false, incomplete or misleading testimony, he is subject to prosecution for any federal criminal violation of which the Offices have knowledge, including perjury and obstruction of justice, and that (b) if he provides false, incomplete, or misleading testimony all prior statements he has made to the Government or law enforcement may be admissible in evidence in any criminal proceeding against him. This agreement is attached hereto as sealed Exhibit 1. Co-Conspirator 1's oath is thus legally and practically enforceable. Cf. Def. Opposition at 20 (arguing that the Government has "offered no assurances, legal or practical" about the enforceability of Co-Conspirator 1's oath).

### III. The Confrontation Clause does not require that Edelman have an in-person face-to-face opportunity to confront Co-Conspirator 1

Edelman claims that if he is not allowed to physically attend the deposition, its admission at trial would violate the Confrontation Clause. Def. Opposition, Dkt. 50 at 7-10. The Supreme Court has clearly held that the Constitution does not always require an in-person confrontation: In *Maryland v. Craig*, the Court explained that although "[t]he Confrontation Clause reflects a

preference for face-to-face confrontation at trial," that preference "must occasionally give way to considerations of public policy and the necessities of the case." 497 U.S. 836, 849 (1990).

Indeed, Congress amended the Federal Rules of Criminal Procedure in 2011 to add a section that applies exclusively to situations involving "taking depositions outside the United States without the defendant's presence." Fed. R. Crim. P. 15(c)(3). To say that the Confrontation Clause requires an in-person face-to-face opportunity to confront the witness is to say that all depositions taken under this Rule are unconstitutional. Courts have repeatedly found that the admission of foreign depositions taken outside the defendant's physical presence do not violate the Confrontation Clause. *See, e.g., United States v. Abu Ali*, 528 F.3d 210, 239-43 (4th Cir. 2008); *United States v. Medjuck*, 156 F.3d 916 (9th Cir. 1998); *United States v. Trabelsi*, 2023 WL 4344526 (D.D.C. June 5, 2023) (*"Trabelsi II"*); *United States v. Lynch*, 2023 WL 7927764 (N.D. Cal. Nov. 15, 2023), *United States v. Suzuki*, 2021 WL 4245354 (D. Nev. Sept. 17, 2021), *United States v. Cooper*, 947 F. Supp. 2d 108 (D.D.C. 2013). The proposed deposition of Co-Conspirator 1 is admissible under these and related cases—and its taking is certainly not futile.

Edelman further argues that the proposed deposition is inadmissible because the Government has not cited a public policy consideration warranting a deposition outside his presence. As discussed above, this is a question to be considered when the Government moves for admission of the testimony prior to trial. But even so, public policy considerations dictate that this deposition go forward even if Edelman cannot physically attend. In *Trabelsi II*, the court relied on the "impossibility" of transporting defendant to the country of deposition, as well

as "global dimension" of the charges against the defendant.[2]  2023 WL 4344526, at *17.  Here, the indictment alleges that Edelman defrauded the United States and evaded U.S. taxes by, among other things, using foreign entities and bank accounts to conceal his ownership of significant assets around the world.  There is undoubtedly a "global dimension" to this case, and a public policy interest in ensuring that international scofflaws may not avoid successful prosecution by choosing foreign nationals as their co-conspirators.

### IV. Edelman conflates credibility determinations and his Confrontation Clause rights

After arguing that the Government's proposed deposition procedures would violate his Confrontation Clause rights, Edelman proposes essentially the same procedures as the Government (i.e. Edelman is present in Washington D.C. observing over two-way video with counsel from both parties), with the addition that the Court preside over the deposition, and eventually preside over the case as the trier-of-fact. Def. Opposition, Dkt. 50 at 21-22.  Edelman argues, in brief, that a bench trial would mitigate any harm caused to his Confrontation Clause rights because the Court is a more experienced jurist and could make a more informed credibility determination than a jury.

This argument conflates two issues: whether Edelman prefers that the Court make credibility determinations, and whether the deposition procedures give him an adequate opportunity to cross-examine the witness.  The Confrontation Clause gives Edelman an opportunity to cross-examine the witness, and this opportunity may involve the judge, jury, and defendant viewing the demeanor of the witness over video.  *See Craig v. Maryland*, 497 U.S.

---

[2] The court also cited the "extraordinary lengths" taken by the government to secure live witness testimony. Id.  Here, there is no question that Co-Conspirator 1 cannot travel to the United States due to health issues—there are no lengths for the government to take to change this.

836, 851 (1990). Whether this opportunity is adequate does not depend on who the ultimate fact finder is. In either case, Edelman's counsel will have many hours to cross-examine the witness, Edelman and the witness will be able to view each other, and Edelman will have the ability to speak with his defense counsel in Washington and London during the deposition. These procedures ensure an opportunity to effectively cross-examine Co-Conspirator 1. Though Edelman may prefer that the Court make credibility determinations for the reasons he sets out in his brief, this preference has no bearing on whether the deposition procedures afford him a reasonable opportunity to cross-examine the witness.

### V. Unnecessarily linking the bench trial decision to the Confrontation Clause question at this stage risks issues down the road

Edelman's proposal assumes that the conditions in place now will be the same as those for trial. His proposal does not allow for a change in his trial strategy or a change in the presiding district judge.[3] Additionally, it is not clear to the Government whether his proposal requires him to waive all objections to the admissibility of the deposition, or whether he maintains the ability to object to its admission down the road (despite having committed the Government and the Court to a bench trial for the purpose of the deposition's admission).

The Government anticipates requesting at least one—and potentially as many as four—additional Rule 15 depositions for witnesses who are unavailable because they not within the jurisdiction of the United States. There may also be a second Rule 15 deposition request to preserve the testimony of a witness with health issues. The Government has identified these witnesses to Edelman's counsel. It is unclear whether Edelman's proposal for the Court to preside would extend to all of these other depositions.

---

[3] Edelman's counsel signaled that his client would waive the right to challenge admissibility of the deposition if, for some reason, the Court was not the trier of fact at the eventual trial.

Moreover, Edelman's arguments for why the Court needs to preside in order to make a credibility determination do not make sense. Regardless of whether the Court or a jury are the fact finders, they will be watching the same video recording of Co-Conspirator 1's testimony. Even if the Court was the ultimate fact finder, Edelman does not explain why she needs to watch the video live as opposed to viewing the tape as part of a trial, when it can be viewed in the context of the parties' statements and other evidence presented.

### VI.     This deposition must be expedited

If it is logistically feasible to schedule the deposition so that the Court or a magistrate judge presides over the entirety of the proceedings, the Government would welcome this option. But having a judge to administer the oath and be on call to resolve disputes between the parties is adequate to ensure that the deposition complies with the relevant law. This deposition is requested on an expedited basis because Co-Conspirator 1 has health issues that may render him unavailable in the not-too-distant future. If it would be more than a few months before the Court or a magistrate judge is able to clear the time necessary to preside over this deposition,[4] Co-Conspirator 1 may become unavailable in the interim.

### VII.    Defendant Le Dain is still a fugitive

The Government continues to provide Le Dain's counsel with updates about the requested Rule 15 deposition of Co-Conspirator 1 to preserve his testimony for the trial of Defendant Edelman and Defendant Le Dain. Le Dain is still a fugitive. The Government will

---

[4] The Government estimates that it needs approximately 15 hours for the direct examination of Co-Conspirator 1. Edelman's counsel has recently estimated his cross examination will be 4 hours. Given the time difference, it is unlikely for the deposition days to be more than 4 or 5 hours each (approximately 9 a.m. ET to 3 p.m. ET, which is 2 p.m. to 8 p.m. London time). So the presiding judicial officer would likely need to reserve, at minimum, approximately 9 a.m. to 3 p.m. for five days. The Government, Edelman's counsel, and Co-Conspirator 1's counsel have all been holding the week of February 2, 2025, for the deposition.

forward this filing to Le Dain's counsel, and anticipates taking deposition testimony related to defendant Le Dain despite her lack of appearance.

**VIII.　Conclusion**

For the reasons set forth above, the Government respectfully requests that the Court enter the Proposed Order Pursuant to Federal Rule of Criminal Procedure 15 to take the pretrial deposition of Co-Conspirator in the United Kingdom.

Respectfully submitted,

STUART M. GOLDBERG
Acting Deputy Assistant Attorney General



By: _____
Sarah C. Ranney
NY Bar No. 5050919
Trial Attorney
Department of Justice Tax Division
150 M Street, N.E., Room 1.104
Washington, DC 20002
Sarah.C.Ranney@usdoj.gov

Nanette L. Davis
D.C. Bar No. 442136
Senior Litigation Counsel
Department of Justice Tax Division
150 M Street, N.E., Room 1.107
Washington, D.C. 20002

Ezra Spiro
NY Bar No. 5291838
Department of Justice Tax Division
150 M Street, N.E., Room 1.108
Washington, DC 20002
Ezra.K.Spiro@usdoj.gov

MATTHEW M. GRAVES

UNITED STATES ATTORNEY
D.C. Bar No. 481052

By: _____

Joshua A. Gold
TX Bar No. 24103101
Assistant United States Attorney
U.S. Attorney's Office
601 D St NW
Washington, D.C. 20530
Office: 202-815-8965
Joshua.Gold@usdoj.gov